# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MAHESH RAMCHANNDANI,**

      **Plaintiff,**

**v.**                                            **Case No:  6:18-cv-1647-Orl-41DCI**

**SUNIL GAHDHI, CHIRAG**
**KABRAWALA and NIKESH SHAH,**

      **Defendants.**

_____

# REPORT AND RECOMMENDATION

    This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND AMENDED COMPLAINT (Doc. 11)** |
| **FILED:** | **December 6, 2018** |

**THEREON** it is **ORDERED** that the motion is **GRANTED in part**.

## I.    Background

*a.  The First Case*

    On October 25, 2017, Plaintiff Mahesh Ramchanndani[1] and two of this family members, proceeding *pro se*, filed a Complaint that contained allegations in relation to a commercial lease; there was no indication in the Complaint as to why this Court had subject matter jurisdiction over

---

[1] In the underlying case, Plaintiff spelled his name as "Mahesh Ramchandani" – with two letters "n" in his last name.  Here, Plaintiff proceeds as "Mahesh Ramchandanni" – with three letters "n" in his last name.  Regardless, it appears undisputed that Plaintiff is the same person in each case.

that case. *Mahesh Ramchandani et al. v. Sunit Sanghrajka et al.*, 6:17-cv-1848-CEM-DCI (M.D. Fla.) at Doc. 1 (hereafter the First Case).[2]  Thus, on November 17, 2017, the Court entered an Order to Show Cause (First OTSC) why that case should not be dismissed for lack of federal subject matter jurisdiction.  Doc. 6.  In his response to the First OTSC, Plaintiff claimed that the Court had jurisdiction over this matter pursuant to the Fair Housing Act (FHA).  First Case at Doc. 12 at 1-3.  But Plaintiff's cause of action revolved around a commercial lease, not a residential lease.  *See* First Case at Docs. 1; 12; *see* 42 U.S.C. §§ 3602, 3604-3606.  Thus, Plaintiff failed to demonstrate that the Court had federal question jurisdiction over that matter.  Plaintiff also claimed that the Court had diversity jurisdiction over that matter.  First Case at Doc. 12 at 3-4.  But Plaintiff did not provide the citizenship of Defendants.  *Id*.  Moreover, although Plaintiff stated that he resided in Virginia, Plaintiff did not make any allegations regarding his own citizenship.

Thus, on January 4, 2018, the Court again ordered Plaintiff to show cause in writing why that case should not be dismissed for lack of federal subject matter jurisdiction.  First Case at Doc. 13 (the Second OTSC).  In the Second OTSC, the Court directed that, to the extent Plaintiff was claiming federal question jurisdiction, Plaintiff must specifically list all statutes, laws, or constitutional provisions that are at issue in this case.  *See* 28 U.S.C. § 1331.  To the extent Plaintiff was claiming diversity jurisdiction, Plaintiff was required to state the citizenship of each and every party and state the amount in controversy.  *See* 28 U.S.C. § 1332.

On January 31, 2018, Plaintiff filed an Amended Complaint.  First Case at Doc. 16.  In the Amended Complaint, Plaintiff purported to state a claim pursuant to 42 U.S.C. §§ 1981, 1982, 1983, in relation to alleged discrimination and civil rights violations, apparently on the basis of Plaintiff's national origin.  *Id*.  Although Plaintiff made various references to state statutes as well,

---

[2] The First Case named six defendants, three of whom are the Defendants in this case.

the only actual claim for relief tied to a specific legal theory was made pursuant to § 1982, when Plaintiff requested that the Court: "Declare Defendant's actions complained of herein to be violation of Act of 1968 as amended, 42 U.S.C. § 1982." Doc. 16 at 11. Plaintiff also requested damages in the amount of $160,000.00, but there was no clear legal basis for that request. *Id.* at 10-11. Further, it appeared that Plaintiff had abandoned the FHA claim, as it was not in the Amended Complaint.

The undersigned then entered a Report recommending that the case be dismissed without prejudice on several grounds. First Case at Doc. 24. First, the undersigned found that Plaintiff simply failed to allege any facts sufficient to state a federal claim pursuant to §§ 1981, 1982, or 1983. In particular, the undersigned stated:

> As their only basis for their §§ 1981, 1982, and 1983 claim(s), Plaintiffs' recite from an email from Defendant Willow Shambeck (a realtor) to Plaintiffs' relator: "Deal is approved but being that their money is in India I need 4 months deposit. 1 month of that will be for the first month's rent." Doc. 16 at 3. According to Plaintiffs, that email "was a discriminating statement about the Plaintiff(s) being from India and insisted more money for security deposit on June 20, 2016, violates the rights of the Plaintiff(s) to enjoy the same entitlements as any other US citizen," giving rise to liability pursuant to §§ 1981, 1982, and 1983. The remainder of the lengthy Amended Complaint contains allegations of various facts relating to a failed frozen yogurt franchise, Plaintiffs' eventual eviction from the space leased to operate that franchise, and the state court eviction proceedings. *Id.* There is no other mention of any allegedly discriminatory conduct or violation of federal law. *See id.* Plaintiffs' sole allegation that a Defendant required four months' deposit because Plaintiffs' money was in India is not sufficient to state a cause of action under §§ 1981, 1982, or 1983.

First Case at Doc. 24. Thus, the undersigned recommended dismissal of the federal claims.

Next, the undersigned addressed the Court's subject matter jurisdiction and found that Plaintiff had failed to sufficiently allege that jurisdiction, despite being given three opportunities to do so. First Case at Doc. 24. The undersigned found that Plaintiff had failed to allege a federal claim giving rise to federal question jurisdiction and (because Plaintiff explicitly stated that

diversity jurisdiction existed) found that if Plaintiff had alleged a state claim, he failed to sufficiently allege the parties' citizenship.  *Id*.  Thus, the undersigned recommended dismissal of the Amended Complaint without prejudice.  *Id*.  Plaintiff objected to the Report, and, on September 18, 2018, the Court entered an Order overruling those objections and dismissing the First Case without prejudice.  First Case at Docs. 25; 56.

> b.  *This Case*

Two weeks later, on October 2, 2018, Plaintiff filed the Complaint in this case.  Doc. 1. One week after that, Plaintiff filed the Amended Complaint, which remains the operative pleading. Doc. 5.  The Amended Complaint appears to contain two counts: a claim for a violation of 42 U.S.C. § 1982 (Count I); and a claim pursuant to Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (Count II).  Doc. 5.

The allegations in this case revolve around the same core of facts as those in the First Case; this case concerns a failed frozen yogurt franchise.  The three Defendants in this case are a subset of the six in the First Case.  But other than in the opening paragraph and the certificate of service, the Defendants are never mentioned individually in the Amended Complaint.  Throughout the Amended Complaint, allegations are made against "Defendant(s)" with no differentiation as to whether an allegation – or even a particular count – relates to one or all of the Defendants.   Further, under the heading "Parties," Plaintiff states as follows:

> 6) During all times mentioned here in, Defendant(s) are a Limited Liability Company duly authorized and existing under and by the virtue of the laws of the State of Florida. with an office and principal place of business located at 190 E Morse Blvd, Winter Park, FL 32789.

*Id*. at 2.  Thus, it is unclear whether Plaintiff even intended to name Defendants as parties in this case.  As to the factual allegations, Plaintiff included the following "Supporting Facts":

7) On July 18, 2016, Plaintiff signed a lease contract with Defendant(s). for a franchised frozen yogurt shop called "SWEET FROG"

8) Plaintiff hired a construction contractor Smart Key Management to build the store as per franchisor requirements, Store took longer time to built as Defendant(s) did not provide old drawings of the building. and city engineers had to examine the building in depth. Before permitting green signal to the contractor to start construction Exhibit 1

9) Plaintiff open shop for business on Dec 8, 2016.

10) Dec 9, 2016. Sewer Water fell from toilet above at 6 PM and Plaintiff had to close the shop and informed Property Manager on phone about the situation. Plaintiff suffered lot of pain and suffering and loss of inventory due to this incident. Defendant(s) did not offer any compensation as well refuse to give name of insurance company to file a claim. Exhibit 2

11) Jan. 5, 2017 Plaintiff received eviction notice.

12) Feb 14, 2017 Plaintiff was evicted. Ninth Judicial Court Case no l 7-CV-0000280-O.

*Id*.

Next, as to the claims for relief, Plaintiff listed "Count I," which contained two sub-headings.  The first sub-heading was titled "Federal Law Violation" and read in its entirety as follows:

13) While negotiating the lease and other terms of the lease, Defendant(s) employee violated the **Federal rule 42 U.S.C. § 1982** by email to Plaintiff's realtor saying, "we need 4 months of rent as security deposit because their money is coming from India"

*Id*. (emphasis in original).  The second sub-heading was titled "Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Sections 501.201 Violations" and contained additional allegations concerning the commercial lease, the build-out of the frozen yogurt shop and difficulties related thereto, and the eventual eviction.  *Id*. at 4.

The next section of the Amended Complaint is titled "Diversity of Citizenship" and includes assertions that Plaintiff is a citizen of Virginia, that "Defendant(s) are Florida Citizen," a

citation to the underlying commercial lease related to the frozen yogurt shop, and allegations that the amount in controversy exceeds $75,000. *Id*. at 5.  The remainder of the Amended Complaint appears to be annotations from a legal reference book related to various legal concepts, such as establishing the citizenship of a corporation and the exercise of federal question jurisdiction. *Id*. at 6-7.

> c. *The Motion to Dismiss*

In response to the Amended Complaint, Defendants filed a Motion to Dismiss.  Doc. 11 (the Motion).  In the Motion, Defendants make several arguments for dismissal of the Amended Compliant.  First, Defendants note that Plaintiff lacks standing to enforce the underlying commercial lease entered into between business entities, none of which are parties to this action. Second, Defendants assert that the Amended Complaint is a shotgun pleading that neither differentiates the facts relevant to each count nor the allegations made against any particular Defendant.  Third, Defendants argue that the purported § 1982 claim fails to state a cause of action. Fourth, Defendants assert that the purported FDUPTA claim, at best, attempts to assert a breach of contract and, as such, fails to state any of the elements necessary for a cognizable FDUPTA claim.  At the conclusion of the Motion, Defendants make perfunctory requests for a more definite statement and for their attorney fees and costs – requests that fail to comply with Local Rule 3.01 and are otherwise without merit.

Plaintiff filed a Response to the Motion.  Doc. 17.  In the Response, Plaintiff states that after his eviction from the leased property, he learned that Defendants broke the law.  *Id*. at 2. Concerning Defendants' argument that the Amended Complaint is a shotgun pleading, Plaintiff seems to concede that he makes no actual allegations against the named Defendants but asserts that they were copied on emails and "could have raised their objection and voted not to evict"

Plaintiff. *Id.* Concerning Defendants' argument that this is a breach of contract claim not actionable under FDUTPA, Plaintiff states that "I will not argue on this point," and instead makes a request for the Court to "punish" Defendants "for the crimes they have done." *Id.* As to the § 1982 claim, Plaintiff simply states that the request for the three months' security deposit was discrimination on the basis of national origin. *Id.* at 1. Under a heading of "What Remedy Plaintiff wants," Plaintiff first lists his two purported claims for violations of § 1982 and FDUTPA, and then lists several other purported violations: a violation of a Florida criminal law statute concerning a threatening email, seven counts of breach of contract, and four violations related to the underlying state court eviction process. *Id.* at 3. None of these latter claims are alleged in the Amended Complaint.

## II.   Discussion

The Court must liberally construe *pro se* pleadings. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). A *pro se* pleading, however, must "still comply with procedural rules governing the proper form of pleadings," *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010),[3] because the Court will not "rewrite an otherwise deficient pleading in order to sustain an action," *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2014) (citation omitted).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

555 (2007).  Further, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).

"A complaint that fails to comply with Rules 8 and 10 may be classified as a shotgun pleading."  *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015) (internal quotation marks omitted).  There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which.  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).  "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* at 1323.  As this Court has explained:

> The U.S. Court of Appeals for the Eleventh Circuit warns that actions founded on shotgun pleadings should not be permitted because "issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. College*, 77 F.3d 364, 367 (11th Cir. 1996); *see also Chapman AI Trans.*, 229 F.3d 1012, 1027 (11th Cir. 2000) ("We have frequently railed about the evils of shotgun pleadings and urged district courts to take a firm hand...."). Heeding this warning, when confronted with a shotgun complaint, district courts must require the party to replead. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127–28 (11th Cir. 2014) (criticizing district court for failing to police shotgun pleadings); *Starship Enters. of Atlanta, Inc. v. Coweta Cty. Ga.*, 708 F.3d 1243, 1250 n.7 (11th Cir. 2013) (explaining that shotgun pleadings may constitute "an abusive tactic" of litigation).

*Kendall v. Boston Sci. Corp.*, No. 6:17-cv-1888-ORL-37GJK, 2017 WL 6042020, at *1 (M.D. Fla. Dec. 6, 2017).  If repleader is ordered, "[t]his initial repleading order comes with an implicit notion that if the plaintiff fails to comply with the court's order—by filing a repleader

with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (internal quotation marks omitted).

    a. *Shotgun Pleading*

As argued in the Motion, Plaintiff's Amended Complaint is due to be dismissed as a shotgun pleading. The Amended Complaint falls squarely within the second and fourth categories of shotgun pleadings. Indeed, although Plaintiff does not simply re-allege all preceding counts, the Amended Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." In particular, the Amended Complaint – and the prior action – clearly involve allegations related to Plaintiff's failed frozen yogurt shop and his subsequent state court eviction from the premises that housed that shop. The facts underlying what appears to have been a personally and financially devastating loss for Plaintiff, while very unfortunate, simply are unrelated to the claims that Plaintiff has purported to state – a violation of § 1982 and a FDUPTA violation. As such, neither the Court nor Defendants can determine exactly what Plaintiff intends to be the basis of his claims. And while Plaintiff states in his Response that Defendants should be punished by the Court for their "whitecollar crimes" and deception, those types of bare allegations – and their corollaries within the Amended Complaint itself – are exactly the conclusory, vague, and immaterial facts that fall within the second category of shotgun pleadings.

In addition, the Amended Complaint is due to be dismissed because it falls within the fourth category of shotgun pleadings: it asserts two claims against multiple defendants without specifying which applies to which. Indeed, this is the primary failing of the Amended Complaint, because not one of Defendants is actually mentioned by name in the Amended Complaint, nor is any

particular Defendant alleged to have taken any particular action.  Instead, Plaintiff makes repeated references only to "Defendant(s)" and, to make matters worse, describes "Defendant(s)" as a "Limited Liability Company."  Thus, there is no way for the Court, or Defendants, to determine which allegations – if any – actually apply to them.   Plaintiff seems to concede this failing in his Response by asserting that he has sufficiently alleged claims against Defendants only because they were copied on emails and could have stopped his eviction.

Accordingly, the Amended Complaint is due to be dismissed because it fails to comply with Rules 8 and 10, in that it contains vague and conclusory allegation unrelated to the purported claims and, more fundamentally, simply fails to allege that any Defendant took any particular act at all.

      *b.*  *Remaining Rule 12(b)(6) Arguments*

Defendants also move pursuant to Rule 12(b)(6) to dismiss the Amended Complaint because the purported § 1982 claim fails to state a cause of action.  The undersigned agrees and will again recommend that Plaintiff's § 1982 claim be dismissed.  In the First Case, Plaintiff made an almost identical claim, and the undersigned recommended dismissal of that claim; the same reasoning holds true here.  Indeed, the entirety of Plaintiff's § 1982 violation is that "Defendant(s) employee" sent an email to "Plaintiff's realtor saying, 'we need 4 months of rent as security deposit because their money is coming from India.'"  *See* Doc. 1-4.   That is not sufficient to state a claim against Defendants for a violation of § 1982.

Defendants also move pursuant to Rule 12(b)(6) to dismiss the Amended Complaint because the purported FDUPTA claim fails to state a cause of action, primarily because, at best, Plaintiff attempts to assert a breach of a commercial lease, not a FDUPTA claim.  In the Response, it appears that Plaintiff concedes Defendants' legal argument, by stating that "I will not argue on

this point," and instead making a request for the Court to "punish" Defendants "for the crimes they have done." Doc. 17 at 2. The Court agrees that Plaintiff has failed to state facts sufficiently alleging a violation of FDUTPA, but the Court need not address this issue further because the Amended Complaint must be dismissed for the more fundamental reason already discussed: the Amended Complaint makes no particular allegations against any of the named Defendants. Further, in the Response, it appears that Plaintiff attempts to assert several breaches of the commercial lease agreement and challenge the state court eviction. *Id*. at 3. Of course, alleging new claims must be done in compliance with the Federal Rules of Civil Procedure and certainly cannot be done in a response to a motion. And even if a new pleading were allowed, Plaintiff has failed to: establish standing to sue for a breach of the commercial lease at issue; allege any action by any particular defendant; sufficiently allege the citizenship of the parties or the amount in controversy; sufficiently allege facts supporting any breach of contract; state any basis for the Court to consider an action concerning a state court eviction; or otherwise comply with the pleading standards necessary to bring the actions listed in the Response.

   c.  *Nature of the Dismissal*

   The only question remaining is whether Plaintiff should be permitted to file a second amended complaint. He should not.

   A *pro se* plaintiff must generally be given one chance to amend his complaint if the district court dismisses the complaint. *Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003). A district court, however, need not allow an amendment where amendment would be futile. *Cornelius v. Bank of America, NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary

judgment for the defendant." *Id.; see Vibe Micro*, 878 F.3d at 1295 (noting that if the plaintiff files an amended complaint with the same deficiencies as the previous complaint the court, depending on the circumstances, may dismiss the case).

Plaintiff has already been given several opportunities to file an amended complaint that complies with the dictates of Federal Rules of Civil Procedure 8 and 10.  The undersigned issued two orders to show cause in the First Case and entered a Report recommending dismissal without prejudice, identifying many of the same issues discussed in this Report.  Further, the Court entered an Order considering Plaintiff's objections, adopting the Report, and dismissing the First Case without prejudice, again identifying many of the same issues discussed herein.  Despite this guidance and warning, Plaintiff filed the Complaint and then the Amended Complaint, which contains many of the same, exact issues already identified by the Court.  Given the nature of the issues in the First Case, and the Complaint and Amended Complaint here, namely the failure to tie any allegation to a Defendant, the failure to sufficiently allege subject matter jurisdiction, and the failure to allege a federal claim, there is nothing to suggest that giving Plaintiff another opportunity to file a second amended complaint will lead to a different result.  To the contrary, the record suggests that Plaintiff will not sufficiently address the issues discussed herein.  Thus, considering the Complaint, the Amended Complaint, and Plaintiff's other filings in this case,[4] the undersigned finds that granting Plaintiff leave to file a second amended complaint will be futile.  Therefore, the undersigned finds that the Amended Complaint should be dismissed, and the case should be closed.

---

[4] Plaintiff has made several other filings in this case and the First Case.  And while the Court has construed those filings liberally and granted Plaintiff's requested relief where appropriate (*see* Doc. 25), the substantive nature of the underlying facts, i.e., the breach of a commercial lease between two business entities, is so divorced from the purported claims that the Court believes that a review of the relevant dockets as a whole supports the conclusion that amendment is futile.  While the underlying collapse of Plaintiff's business is certainly unfortunate, the claims that Plaintiff seeks to bring in the Amended Complaint are just not properly before this Court.

### III.     Conclusion

Accordingly, upon due consideration, it is respectfully **RECOMMENDED** that the Motion (Doc. 11) be **GRANTED in part** and the Amended Complaint be dismissed with prejudice.   It is **RECOMMENDED** that the Motion (Doc. 11) be **DENIED** to the extent Defendant seeks attorney fees, costs, or any other relief.

If the Court adopts the recommendation for dismissal but disagrees that dismissal be with prejudice, then it is recommended that Plaintiff be cautioned that "if the [P]laintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court [may] strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions."  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 21, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy